(C. D. 1891)

PAILLARD PRODUCTS, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 21, 1957)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The merchandise at bar, invoiced as "M8 Projectors, without lamp," was classified under paragraph 228 (b) of the Tariff Act of 1930 at the rate of 45 per centum ad valorem as frames and mountings for projection lenses. Plaintiff claims the articles in question properly classifiable at 13¾ per centum ad valorem under

paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, as "Articles having as an essential feature an electrical element or device * * * Other," or, alternatively, under paragraph 228 (b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, at the rate of 25 per centum ad valorem as "Photographic lenses * * * not specially provided for."

A sample representing the imported projectors, together with certain lenses imported with them (plaintiff's exhibit 2), was received in evidence as plaintiff's exhibit 1. It was stipulated that the projectors at bar are wholly or in chief value of metal. There is no dispute as to the classification of these lenses.

Also introduced in evidence was a drawing (plaintiff's illustrative exhibit 3), showing the operating parts of plaintiff's exhibits 1 and 2; a cutout, showing the inside of the construction of the lenses (plaintiff's illustrative exhibit 4, R. 25); and a cutout section (plaintiff's illustrative exhibit 5) of the so-called lens frame (item "KKK" on the illustrative diagram).

Plaintiff called Mr. Charles Huettenmoser, manager of the service and technical division of the importing concern, who testified that he was familiar with the imported projectors and described their operation substantially as follows: A projector is an apparatus which produces an intermittent movement of a film during which time the light is cut off by a shutter; these intermittent movements are performed by a mechanical part, driven by an electrical motor with a shutter synchronized to it. The film is moved while the shutter blade is covering up the aperture, so that no picture is projected while it is being moved. Then, while the picture is standing still, "which is the intermittent movement," the shutter blade interrupts once, or more than once, so that the undesirable flicker on the screen is not noticed. The electrical apparatus controls the entire mechanical movement and supplies power to a lamp to give the necessary light reflected through the film, permitting the transfer of the picture from the lens onto the screen. In addition, it controls a blower, which cools the light so as to avoid intense heat which might burn up the machine. There are two lens elements in the housing of the instrument, consisting of four pieces of glass.

The record further discloses that plaintiff's exhibit 1 contains certain other parts and mechanisms, including electrical elements, more fully identified in plaintiff's illustrative exhibit 3, all of which are necessary for the operation of the machine in its end use. The witness described a portion of the machine as "the frame housing and entire casting of the projector, electrical apparatus and mechanism" (letter "W"). Mr. Huettenmoser testified that plaintiff's exhibit 1 is not designed to

be operated manually and cannot be operated by any means other than electrically. He described the item designated as "KKK" on plaintiff's illustrative exhibit 3 as "the lens frame which holds the lens in position to the projector and frames the picture area" and the item "GGG" on the said diagram as "the lens housing which holds the optical elements in position in a very precise given space, one from another," and which, in the opinion of the witness, was the "lens mount" (R. 30–31), stating that a lens "housing" and a lens "mount" are the same thing, namely, that which holds the lens in position (R. 34–35). The witness agreed that he knew of no other use for the imported lenses than in connection with the imported projectors. He further testified that he had never separately imported the "lens housing" or the lens frame (items "GGG" and "KKK"), but that the lenses and the lens housing are imported intact and that the lens frame is imported attached to the projection apparatus.

Plaintiff's witness further testified that plaintiff's exhibit 1 is "a metal support," explaining that "The entire frame of the machine supports the mechanism," the electrical equipment and the mechanical equipment, i. e., "all the parts are supported by the frame" (R. 44). In this connection, the witness admitted that plaintiff's exhibit 1 has a basic frame upon which the various parts are mounted, including the housing for the lens, "in order that the entire assembly may be a complete motion picture projector when the lens is inserted" (R. 53–54), further explaining "The entire machine is mounted on a housing which can be considered as a frame" (R. 60).

The defendant called two witnesses. Elmer S. Lindfors, vice president in charge of eastern operation with Bell-Howell, manufacturer of motion-picture equipment, stated that, based on his experience, he was familiar with motion-picture projectors and motion-picture machines. He testified that the lens elements in plaintiff's exhibit 1, exclusive of the rest of plaintiff's exhibit 2, are not "projection lenses per se," and are not considered projection lenses, unless they are incorporated in the complete assembly (plaintiff's exhibit 2) (R. 65).

Mr. Lindfors testified that the "frame" for a projection lens would be "this entire unit which holds the various components which are assembled to the frame." He described the item "GGG," the barrel in which the lens elements are mounted, as the mounting for the projection lens, stating: "The projection lens has been slipped into the mounting which attaches the lens to the projector. The mounting is attached to the frame of the projector and is part of the unit." (R. 66–68.) Referring to plaintiff's exhibit 1, the witness testified as follows:

CHIEF JUDGE OLIVER: How do you describe that entire unit?

THE WITNESS: This would be the combination of the projection lens and the lens mounting.

CHIEF JUDGE OLIVER: And all the other elements?
THE WITNESS: Yes (R. 69).

He testified that the entire unit, plaintiff's exhibit 1, is both a frame for a projection lens and also a frame "for the entire working unit" of the projector, because "it frames everything in there" (R. 71–72), and that the lens elements, as assembled in the housing (plaintiff's exhibit 2), are known as "projection lens."

The defendant's second witness was Robert E. French, associated with the Keystone Manufacturing Co., maker of cameras and projectors, in the capacity of chief engineer since 1950, and, prior thereto, being employed by the same concern as project engineer. He had also been connected with the Office of Naval Intelligence, United States Navy, where he had sold motion-picture projectors and other scientific equipment and, prior to this association, had been employed by the Eastman-Kodak Co., also as a project engineer. After testifying as to his familiarity with merchandise, such as plaintiff's exhibits 1 and 2, the witness stated that the four elements contained in exhibit 2 are known as lens elements, but that they are not separately, by themselves, projection lenses; that they "have to be mounted in a mounting such as this with a definite air space between and all mounted in this style and then the whole unit for assembly is known as a projection lens," and that the entire unit, plaintiff's exhibit 2, is a "projection lens" (R. 79). Mr. French testified that "A frame for a projection lens is the mounting for the projection lenses" and that the mounting for the projection lens on plaintiff's exhibit 1 is the item "KKK" (plaintiff's illustrative exhibit 3), which he stated was "a necessary and indispensable adjunct for the proper operation of Exhibit 1." The witness then testified, however, that the frame for the projection lenses in the importation at bar consists of "one or more die-castings that provide for the mounting of the lens, the whole optical system, motors, condensers, all the separate parts or components that go to make up a complete projector" (R. 86), because "the mounting of the lens must hold the optical axis of the optical system there, concentric with the optical centers of the pictures." Mr. French did not consider the item "GGG," the lens housing for the optical elements, to be a frame or mounting for the projection lens (R. 82–84).

The provision for frames and mountings for projection lenses under the present and prior tariff acts has been previously construed in decisions by this and our appellate court, reference to which we deem pertinent in the determination of the proper classification of the involved merchandise.

In *American Holding Corp. et al.* v. *United States*, 18 C. C. P. A. (Customs) 275, T. D. 44449, the merchandise under consideration

was an essential unit of a motion-picture projector mechanism, consisting, in a general way, of a metal frame, to which were attached sprockets or shafts, the function of which was to impart motion to the film to pass through a path of light, and a shutter unit synchronized with an intermittent sprocket, so as to control the passage of the rays of light from the lamp house to the screen, and upon which the projector lens was mounted. It was classified under paragraph 228 of the Tariff Act of 1922 as "projection lenses * * * and frames and mountings for the same," and claimed dutiable either under paragraph 372 of the said act as machines or under paragraph 399 as articles of metal. The importer maintained that the only articles covered by the statutory terms "frames and mountings" for projection lenses were the cylindrical metal tubes or barrels which held the lenses in fixed relation, one to another; but that, if the claimed construction of the statutory term was "too narrow," the articles should, in any event, be so interpreted as to exclude anything farther removed from the lenses than the so-called metal lens holders, the articles in which the lenses and the cylindrical metal lens tubes or barrels were mounted. Our appellate court, in the *American Holding Corp.* case, *supra,* made reference, *inter alia,* to the case of *United States* v. *American Express Co.,* 7 Ct. Cust. Appls. 169, T. D. 36490.

The merchandise in the *American Express Co.* case, *supra,* consisted of a metal structure, designed to serve as a support for the motive machinery, film reels, lamp house, and projection lenses of a motion-picture machine. It was classified at the rate of 35 per centum ad valorem under paragraph 93 of the Tariff Act of 1913 as frames and mountings for optical instruments and claimed dutiable at the applicable rates under paragraph 167 of the act as articles of metal or under paragraph 94 as frames and mountings for projection lenses. In discussing the collector's classification, the court, in the *American Express Co.* case, *supra,* page 171, stated:

The Government contends that the moving-picture machine of which the importation is a part is an optical instrument and that it is something more than a projection lens; that is to say, a projection lens mounted on a frame with the appliances necessary to make it ready for use ceases to be a projection lens and becomes a moving-picture machine, which, it is claimed, is an optical instrument. From that as a premise it is argued that the frame designed to support the projection lens and the appliances necessary to make it useful is not the frame of a projection lens, but the frame of an optical instrument. The difficulty with that argument is that Congress saw fit to provide in paragraph 94 for "projection lenses, and frames and mountings for the same," and therefore must have contemplated such a thing as a projection lens having a frame and mountings, and consequently a projection lens mounted and ready for use. * * *

With regard to what constituted a frame or mounting, under the relevant predecessor paragraph, the court, in the cited case, page 171, further stated:

\* \* \* True, the metal tube into which the lens is fitted might be called a mounting or even a frame in the sense that it incloses the lens as a frame incloses a picture. If that restricted meaning, however, is given to the terms "frames" and "mountings" when applied to projection lenses, the same restricted meaning must be given to them when applied to the surveying instruments and telescopes provided for in the same paragraph, and that we do not think can be done, inasmuch as surveying instruments and telescopes are certainly something more than mere lenses. (See "Telescope," Standard Dictionary and Encyclopedia Britannica.) If frames and mountings for surveying instruments and telescopes mean the supporting structure and certain adjuncts of those instruments required for their use, then they must mean the supporting structure and certain adjuncts of a projection lens required for its use.

In our opinion, the evidence in this case very clearly establishes that the metal support, the reels, the electric lamp, the mirror, the condenser, and the motive machinery are all instrumentalities designed to aid and assist the projection lens in producing on a screen an enlargement of the small pictures on the film, and that without such appliances the projection lens would be wholly ineffective for that purpose. Unquestionably the completed article would be a moving-picture machine and possibly it might be regarded as an optical instrument. Nevertheless, it would be at the same time a projection lens supported by the frame and fitted with the adjuncts which make it available for use. From that it follows that even if the frame here involved be considered as the frame for an optical instrument, it is none the less the frame for a projection lens, and as frames for projection lenses are provided for in paragraph 94, that provision must be preferred to the less specific and more comprehensive provision in paragraph 93 covering frames for optical instruments.

The court, in the *American Holding Corp.* case, *supra*, following the reasoning of the court in the *American Express Co.* case, *supra*, held the involved unit of the motion-picture projector mechanism properly dutiable, as classified, as "projection lenses \* \* \* and frames and mountings for the same," the articles in question being *eo nomine* provided for in paragraph 228 of the relevant act, and more specifically provided for therein under the *eo nomine* provision than as parts of machines under paragraph 372 of the act, as claimed.

Plaintiff, in contending for classification under paragraph 353 of the act, directs our attention to the cases of *United States* v. *Paramount Publix Corp.*, 22 C. C. P. A. (Customs) 452, T. D. 47453; *Meadows Wye & Co., Inc., et al.* v. *United States*, 70 Treas. Dec. 418, T. D. 48572; *United States* v. *Milton Diamond and Massce-Barnett Co., Inc.*, 42 C. C. P. A. (Customs) 9, C. A. D. 561; *United States* v. *Dryden Rubber Co.*, 22 C. C. P. A. (Customs) 51, T. D. 47050; *Garrard Sales Corp.* v. *United States*, 35 C. C. P. A. (Customs) 39, C. A. D. 369; *Thorens, Inc.* v. *United States*, 31 C. C. P. A. (Customs) 125, C. A. D. 261; and *United States* v. *Clay Adams Co., Inc.*, 20 C. C. P. A. (Customs) 285, T. D. 46078. The factual situations in the cited cases are, in our opinion, distinguishable from that in the case at bar, and these cases are not controlling in the determination of the present issue.

In the *Garrard Sales Corp., Thorens, Inc., Clay Adams Co., Inc.,* and *Paramount Publix Corp.* cases, *supra,* there was involved the question of the classification of a combination article, and the holding of the court in those cases turned upon that fact, which factor is not present in the case at bar.

The court, in the *Meadows Wye* case, *supra,* held the involved merchandise dutiable under the provisions of paragraph 353 of the act, because the electrical elements in the involved apparatus were the primary essential features in its operation, two of the essential articles being certain fans operated electrically and without which the apparatus could not be used. It is noted, in this connection, that paragraph 353 of the tariff act, under which the merchandise in the cited case was held classifiable, provides *eo nomine* for (electric) "fans."

In the *Milton Diamond* case, *supra,* the court therein held that the complicated sound apparatus of the imported motion-picture projector broadened the status of the imported device and extended its classification beyond the provisions of paragraph 228 (b) of the tariff act and that it was properly dutiable under the provisions of paragraph 353. The factual situation there was unlike that in the case at bar.

In the *Dryden Rubber Co.* case, *supra,* there was involved a machine for cutting rubber, containing two electric motors, which furnished the motive power for the proper operation of the machine. The provisions of paragraph 228 (b) of the Tariff Act of 1930, here in issue, were not before the court in that case, and the classification under the provisions of paragraph 353 was upheld on the basis of the record there presented.

We are of opinion that the holdings of our appellate court in the *American Holding Corp.* and *American Express Co.* cases, *supra,* are controlling in the determination of the proper classification of the merchandise here involved. Plaintiff's witness, Huettenmoser, agreed that illustrative exhibit A in the case of *American Holding Corp.* v. *United States,* 56 Treas. Dec. 486, T. D. 43684, was a moving-picture projector (R. 39), as is the importation at bar. The merchandise there involved was held classifiable as frames and mountings for projection lenses. Further, the record herein supports the conclusion that, while the optical lenses herein, when they are affixed or assembled, are permanently affixed to the housing or barrel and that "they are handled as a unit" (R. 75), these lens elements are not projection lenses, unless they are incorporated in the complete assembly when they thus become "projection lenses" (R. 79), and, further, that this projection lens unit could not function, as such, until it was mounted to the frame of the projector (R. 66–68). Plaintiff's witness admitted that plaintiff's exhibit 1 has a basic frame, upon which the various parts are mounted, including the housing

for the lens, "in order that the entire assembly may be a complete motion picture projector when the lens is inserted" (R. 53–54). Plaintiff's witness further agreed that the projection lens (plaintiff's exhibit 2) is designed to be used in conjunction with plaintiff's exhibit 1 and that it can be used for no other purpose. The record in this case, in our opinion, supports a finding that the merchandise here in question is embraced within the provisions of paragraph 228 (b) of the Tariff Act of 1930 as frames and mountings for projection lenses.

Further, respecting the claim under paragraph 353 of the tariff act, the case of *United States* v. *Massce & Co.*, 20 C. C. P. A. (Customs) 210, T. D. 45993, is pertinent. The merchandise there involved, described as "heads of projection machines and film-gate magazine heads, parts of projection apparatuses," was classified, as was the merchandise at bar, and claimed dutiable, as here, under paragraph 353 of the tariff act. After adverting to certain changes in verbiage between paragraph 228 of the Tariff Act of 1922 and paragraph 228 (b) of the present act, the appellate court, in the *Massce* case, *supra*, held that the provision for "frames and mountings therefor" in the present act relates back to "projection lens," named therein, and that it did not apply only to "optical instruments" covered by said provision.

With respect to the applicability of paragraph 353 to the merchandise there involved, the court, in the *Massce* case, *supra*, page 215, stated:

Appellee argues that even if the article might be held to be covered by paragraph 228 (b) it is more aptly and specifically provided for in paragraph 353.

\* \* \* \* \* \* \*

The trial court held the involved merchandise classifiable under said paragraph, but evidently this was based upon the holding that it had been excluded from paragraph 228 (b) by the changes heretofore discussed, and not because that court regarded 353 as being more specifically applicable.

Since we hold that it is covered by paragraph 228 (b) as a frame or mounting for a projection lens, it obviously is there specially provided for, and hence the latter paragraph more specifically covers it than does paragraph 353, even granting, without holding, that it might fall within the general terms of the latter.

The involved merchandise being, in our opinion, specially provided for in paragraph 228 (b) of the Tariff Act of 1930, as "projection lenses * * * frames and mountings therefor," we hold it is more properly dutiable therein, as such, as classified, than under the claimed provisions of paragraph 353 of the relevant tariff act.

On the basis of the record presented and the authorities cited herein, we are of opinion and hold that the merchandise at bar is properly dutiable at the rate of 45 per centum ad valorem under paragraph 228 (b) of the Tariff Act of 1930 as frames and mountings for projection lenses, as classified. The protest claims in this case are overruled. Judgment will be entered accordingly.