**No. 61229.**—Manca, Inc., et al. *v.* United States, protests 261749–K, etc. (New York).

OLIVER, Chief Judge: These protests relate to two models of so-called microprojectors, identified herein as XIc (plaintiffs' exhibit 1) and XbII (plaintiffs' exhibit 2). The difference between the two models is insignificant. The collector assessed duty at the rate of 45 per centum ad valorem under the provision for "all optical instruments, frames and mountings therefor, and parts of any of the foregoing," not specially provided for, under paragraph 228 (b) of the Tariff Act of 1930, which reads, in part, as follows:

(b) Azimuth mirrors, parabolic or mangin mirrors for searchlight reflectors, * * * photographic or projection lenses, * * * telescopes, microscopes, all optical instruments, frames and mountings therefor, and parts of any of the foregoing; all the foregoing finished or unfinished, not specially provided for, 45 per centum ad valorem.

Plaintiffs' principal claim is for classification of the articles as scientific or laboratory instruments, in chief value of metal, not specially provided for, under paragraph 360 of the Tariff Act of 1930, as modified by T. D. 52739, supplemented by T. D. 52820, carrying a duty assessment of 30 per centum ad valorem. It is alternatively claimed, as stated in counsel's brief—

* * * that the apparatus is dutiable under Paragraph 228 (b) as amended by the General Agreement on Tariff [*sic*] and Trade at 35 per centum ad valorem, as a projection lens with frames and mountings; * * *.

It should be noted that, although paragraph 228, *supra*, was modified, applying a rate of only 35 per centum ad valorem to "projection lenses" and "Frames and mountings for photographic lenses," each of those provisions was covered by a separate Presidential proclamation. The provision for "projection lenses" became subject to the reduced rate under the terms of the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, supplemented by T. D. 52820, that became effective in October 1951. The so-called "new" rate for "Frames and mountings for projection lenses," in the modification of paragraph 228 (b), *supra*, became applicable under the protocol for the accession of Japan to the General Agreement on Tariffs and Trade, T. D. 53865, supplemented by T. D. 53877, that went into effect in September 1955. Since the merchandise covered by all of the protests under consideration was entered prior to the effective date of the modification to paragraph 228 (b) under T. D. 53865, supplemented by T. D. 53877, *supra*, a claim thereunder cannot be invoked successfully herein. However, our conclusion, as developed, *infra*, is dispositive of all claims included in these protests and by amendments thereto.

Two witnesses testified; one on behalf of plaintiffs and the other for defendant. Plaintiffs' witness was an employee of E. Leitz Co., seller of optical and scientific instruments. He stated that he has been associated with his employer since 1941, having been a "sales representative" since 1948, and that "for several years" he has been familiar with the articles in question, having worked on them and observed them in use. Each of the microprojectors under consideration consists of four essential parts, i. e., the light source that illuminates the image being magnified and projected, the condensing unit that concentrates the light, the object holder that holds the specimen to be projected, and a lens system,

consisting of a series of projection lenses and a projection prism. The witness described a microprojector as a built-in light source that projects a stationary image by means of a powerfully brilliant light beam. When a sliced specimen for projection is inserted in the path of light, the light beam passes through it and enters the system of lenses, mounted in a barrel. The light beam enters the objective lens, continues into an ocular lens, and is turned at 90 degrees by means of a projection prism, and then travels across the room onto the screen where the magnified image of the specimen is projected. These microprojectors are principally used by hospitals and medical schools for general conferences or discussions on rare specimens, or specimens of a peculiar nature. The apparatus is ordinarily used in a lecture hall, or an auditorium, or a laboratory, where a group of 20 or 30 people, either students or doctors, can be accommodated. Occasionally, the microprojector is used in industry, usually in a research laboratory. Explaining the operation of the microprojector, the witness stated that the instrument employs the principle of a microscope by the magnification of a specimen and that it includes a projection apparatus which, through the use of light and a lens system, projects the magnified image.

Defendant introduced the testimony of the manager of the New York district office in the scientific division of the Bausch & Lomb Optical Co. The witness stated that he has held the position since 1942; that, prior thereto, and since 1921, he was employed as a salesman in the scientific instrument division of the same company; and that, during the course of his experience and as part of his duties, he became familiar with microprojectors, such as the articles under consideration, having sold such instruments, demonstrated their use to prospective customers, and seen them in operation at conferences and meetings of doctors. He corroborated plaintiffs' testimony to the effect that these microprojectors are chiefly used in hospitals and medical colleges and that they have incidental or occasional use in industry. He concluded his testimony with the statement that the articles in question are microscopes because they do "the very same thing that all microscopes would do with the exception that in this particular form, the light source is so brilliant, that instead of the image being projected on the retina of the eye of a single observer, it is now projected on a screen for the benefit of many observers seeing it at the same time."

The issues now before us were presented in *United States* v. *Clay Adams Co., Inc.*, 20 C. C. P. A. (Customs) 285, T. D. 46078, which involved merchandise that the court described as follows:

The importation consists of the combination of a microscope and a projecting apparatus which is called "Promi" and styled by its sellers as a "Microscopic drawing and projection apparatus." It embodies the principle of the microscope, which magnifies the specimen, and a projecting apparatus which, through the use of a lens and a light, projects the magnified image of the specimen downward on a sheet of paper where the reflected image is shown in a picture or reflection about seven inches in diameter, or upon a screen on the wall where the image is three or four feet in diameter. The evidence shows that the devices are used in biological laboratories, in institutions of learning, in pathological laboratories, in hospitals, and in laboratories of industrial concerns such as paper mills, where the examination of microscopic specimens is desired.

In the cited case, as in the present one, the merchandise was assessed with duty at the rate of 45 per centum ad valorem under paragraph 228 (b) of the Tariff Act of 1930, and the importer sought classification under paragraph 360 of the Tariff Act of 1930, which, so far as pertinent, reads as follows:

PAR. 360. Scientific and laboratory instruments, apparatus, utensils, appliances (including surveying and mathematical instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for, 40 per centum ad valorem; * * *.

The Government contended, in the *Clay Adams Co., Inc.*, case, *supra*, that the importation there under discussion was a projection lens and "frames and mountings therefor, and parts" thereof. The majority opinion of the appellate court rejected the claim in the following language:

* * * We are not impressed with the contention of the Government that the importation at bar consists of a projection lens and frames and mountings therefor. The importation embraces a projection lens and a microscope and something else in the nature of projection apparatus. It may include what might be termed, under some circumstances, frames and mountings, but it would be difficult to determine to what the frames and mountings belong—certainly not frames and mountings for a microscope, because the term "microscope" embraces the whole of that portion of the optical instrument devoted to the principle of magnification. We hardly think either of the terms "projection lenses * * * frames and mountings therefor," or "projection lenses * * * microscopes * * * frames and mountings therefor," aptly describes the merchandise at bar, but we do hold that the provision for "all optical instruments, frames and mountings therefor," clearly embraces the importation at bar.

The importer, in the *Clay Adams Co., Inc.*, case, *supra*, sought classification within paragraph 360, *supra*, under the principle of relative specificity, and argued that the provision for "Scientific and laboratory instruments, apparatus, utensils, appliances, * * * and parts thereof," was more specific than the provision for "optical instruments" in paragraph 228. While the majority of the appellate court overruled the importer's claim, they did so without applying the doctrine of relative specificity. The court expressed its conclusion as follows:

We think the context of paragraph 228 (b) and a consideration of the character of the articles Congress specifically provided for therein compels the conclusion that the legislature contemplated the classification thereunder of merchandise such as is at bar. This being clear to us, hair-splitting considerations involved in determining the degree of specificity of the two provisions is unimportant. The paragraph provides for projection lenses and for microscopes, and the catchall provision covers "all optical instruments." It being conceded that the importation is an optical instrument, is there any plausible reason to conclude that Congress intended to have a different rate of duty apply to a combination of a projection lens and a microscope than that which it made applicable to the units of the combination when imported by themselves? No reason has been assigned, and we know of no plausible reason which can be assigned which would account for Congress intending such an anomalous result. Anomalies of this kind must be avoided if the language permits. The language not only permits the avoidance of such an anomalous result but we think compels it. See *United States* v. *Stone & Downer Co.*, 274 U. S. 225.

In a special concurring opinion in the cited case, the late Judge Hatfield applied the principle of relative specificity and concluded as follows:

Whether the provisions for scientific and laboratory instruments, etc., contained in paragraph 360, be given limited or extended application, they, nevertheless, cover a variety of articles used for numerous scientific purposes, whereas the provision for "all optical instruments" is limited to such scientific instruments as relate to and are used only in the science of optics.

In view of this situation it seems obvious to me that the provision for all optical instruments contained in paragraph 228 (b) is a more specific designation for such instruments than the provisions for scientific and laboratory instruments, etc., contained in paragraph 360.

Accordingly, applying the doctrine of relative specificity, it is evident that the purpose of the Congress was to provide for the involved articles at 45 per centum ad valorem under paragraph 228 (b).

The microprojectors before us in the present case, like the apparatus that was involved in the *Clay Adams Co., Inc.*, case, *supra*, possess and employ the principle of the microscope in the magnification of a specimen and a projecting means which, through the use of a system of lenses and light, projects the magnified image of a specimen on a screen. Hence, the reasoning followed and the statutory construc-

tion invoked in the cited case apply with equal force and effect in this case. Accordingly, we hold the merchandise in question to be properly classifiable under the provision for "all optical instruments, frames and mountings therefor," in paragraph 228 (b) of the Tariff Act of 1930, and dutiable at the rate of 45 per centum ad valorem, as assessed by the collector.

Counsel for plaintiffs, in his brief, has discussed several cases that involved the provisions of paragraph 360, *supra*. Careful consideration has been given to all of those cases, but it is deemed unnecessary to discuss any of them, in view of the complete controlling influence of the *Clay Adams Co., Inc.*, case, *supra*, as hereinabove set forth.

The protests are overruled and judgment will be rendered accordingly.