(C.D. 2071)

Manca, Inc. *v.* United States

United States Customs Court, First Division

(Decided March 20, 1959)

*Eugene R. Pickrell* (*George E. Long* and *Richard F. Weeks* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Richard E. FitzGibbon*, *Murray Sklaroff*, and *Margaret M. Kiley*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: These protests relate to certain so-called microprojectors, which were assessed with duty at the rate of 45 per centum ad valorem under the provision for "all optical instruments, frames and mountings therefor, and parts of any of the foregoing," not specially provided for, under paragraph 228(b) of the Tariff Act of 1930, which reads, in part, as follows:

(b) Azimuth mirrors, parabolic or mangin mirrors for searchlight reflectors, * * * photographic or projection lenses, * * * telescopes, microscopes, all optical instruments, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, not specially provided for, 45 per centum ad valorem.

Plaintiff's principal claim is that these microprojectors are properly classifiable under the provisions for "projection lenses" and "Frames and mountings for projection lenses" under paragraph 228(b) of the Tariff Act of 1930, as modified, *infra*, carrying a dutiable rate of 35 per centum ad valorem. In an alternative claim, plaintiff urges classification of the microprojectors as scientific or laboratory instruments, in chief value of metal, not specially provided for, under paragraph 360 of the Tariff Act of 1930, as modified by T.D. 52739, supplemented by T.D. 52820, with a duty assessment at the rate of 30 per centum ad valorem.

When the protests were called for trial, they were consolidated by order of the court on motion by plaintiff and without objection from defendant. By stipulation between counsel for the respective parties, it was agreed that "the record in *Manca, Inc.* vs. *United States*, decided in Abstract 61229 be admitted into this record as evidence." No additional evidence was offered by either party. Thus, the present case comes before us as a retrial of *Manca, Inc., et al.* v. *United States*, 39 Cust. Ct. 444, Abstract 61229, the record in which has been incorporated herein. We proceed to review the record in that case.

There, as here, the merchandise consisted of microprojectors. They were assessed under the same provision invoked by the collector in this case, and the claims alleged were the same as those made by plaintiff herein.

In the incorporated case, two witnesses testified. One appeared on behalf of plaintiffs. The other testified for the defendant.

Plaintiffs' witness was an employee of E. Leitz Co., seller of optical and scientific instruments. He stated that he has been associated

with his employer since 1941, having been a "sales representative" since 1948, and that "for several years" he has been familiar with the articles in question, having worked on them and observed them in use. These microprojectors are principally used by hospitals and medical schools for general conferences or discussions on rare specimens, or specimens of a peculiar nature. The apparatus is ordinarily used in a lecture hall, or an auditorium, or a laboratory, where a group of 20 or 30 people, either students or doctors, can be accommodated. Occasionally, the microprojector is used in industry, usually in a research laboratory.

Each microprojector consists of four essential parts, i.e., the light source that illuminates the image being magnified and projected, the condensing unit that concentrates the light, the object holder that holds the specimen to be projected, and a lens system, consisting of a series of projection lenses and a projection prism. The witness described a microprojector as a built-in light source that projects a stationary image by means of a powerfully brilliant light beam. When a sliced specimen for projection is inserted in the path of light, the light beam passes through it and enters the system of lenses, mounted in a barrel. The light beam enters the objective lens, continues into an ocular lens, and is turned at 90 degrees by means of a projection prism, and then travels across the room onto the screen where the magnified image of the specimen is projected. Explaining the operation of the microprojector, the witness testified that the instrument employs the principle of a microscope by the magnification of a specimen and that it includes a projection apparatus which, through the use of light and a lens system, projects the magnified image.

Defendant introduced the testimony of the manager of the New York district office in the scientific division of the Bausch & Lomb Optical Co. The witness stated that he has held the position since 1942; that, prior thereto, and since 1921, he was employed as a salesman in the scientific instrument division of the same company; and that, during the course of his experience and as part of his duties, he became familiar with microprojectors such as the articles under consideration, having sold such instruments, demonstrated their use to prospective customers, and seen them in operation at conferences and meetings of doctors. He corroborated plaintiffs' testimony to the effect that these microprojectors are chiefly used in hospitals and medical colleges and that they have incidental or occasional use in industry. He concluded his testimony with the statement that the articles in question are microscopes because they do "the very same thing that all microscopes would do with the exception that in this particular form, the light source is so brilliant, that instead of the

image being projected on the retina of the eye of a single observer, it is now projected on a screen for the benefit of many observers seeing it at the same time."

The provision for projection lenses and frames and mountings therefor was originally embodied in paragraph 228(b) of the Tariff Act of 1930, that also includes the provision for optical instruments and frames and mountings therefor, under which the microprojectors in question were classified. Plaintiff's claim herein for classification of the present merchandise as projection lenses and frames and mountings therefor arises by virtue of modifications to paragraph 228(b), as originally enacted. The provision for "projection lenses" became subject to the reduced rate of 35 per centum ad valorem in the modification of paragraph 228(b) under the terms of the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, supplemented by T.D. 52820. The same reduced rate became applicable to "Frames and mountings for projection lenses" in the modification of paragraph 228(b) under the protocol for the accession of Japan to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877.

Plaintiff, in the course of its argument as set forth in counsel's brief, admits that "a microprojector is technically an optical instrument, but it is more specifically provided for by the designation 'projection lens,' " and, in urging classification of these microprojectors as projection lenses with frames and mountings therefor, cites numerous cases to support its contention that "it has been consistently held that a projection lens is not merely a piece of glass which transmits, bends, magnifies or casts forward a beam of light. It is a projector, and the term projector is now officially recognized as the appropriate appellation for a projection lens." Among the many cases cited by plaintiff are *United States* v. *American Express Co.*, 7 Ct. Cust. Appls. 169, T.D. 36490; *American Holding Corp. et al.* v. *United States*, 18 C.C.P.A. (Customs) 275, T.D. 44449; and *Paillard Products, Inc.* v. *United States*, 38 Cust. Ct. 385, C.D. 1891.

The *American Express Co.* case, *supra*, involved a metal structure, designed to serve as a support for the motive machinery, film reels, lamp house, and projection lenses of a motion-picture machine. In the *American Holding Corp. et al.* case, *supra*, the merchandise consisted of an essential unit of a motion-picture projection mechanism, consisting generally of a metal frame with sprockets or shafts that moved the film from the upper magazine in a downward direction intermittently through the rays of light to the lower magazine, and a shutter unit, synchronized with the intermittent sprocket in such a manner as to control the passage of the rays of light from the lamp house to the screen. The unit was a necessary part of the motion-picture projection device and essential for the projection lens to

properly perform its function. In the *Paillard Products, Inc.*, case, *supra*, the merchandise consisted of a complete motion-picture projection apparatus with lens and other parts and mechanisms, including a housing for the lens, so that the entire assembly formed a complete motion-picture projector.

All of the three cited cases support the proposition that the provision for projection lenses and frames and mountings therefor includes the supporting structure and certain adjuncts necessary for the projection lens to serve its purpose. The distinction between them and the present case lies in the type of merchandise that was involved therein and the article that is under consideration. In each of the cited cases, the basic unit had a single function, i.e., to project only. The microprojector in question is a combination article which, as shown by the record herein, *magnifies* the specimen under observation and *projects*, through the use of light and a lens system, the magnified image.

Controlling of the issues now before us is *United States* v. *Clay Adams Co., Inc.*, 20 C.C.P.A. (Customs) 285, T.D. 46078, which involved merchandise that the court described as follows:

The importation consists of the combination of a microscope and a projecting apparatus which is called "Promi" and styled by its sellers as a "Microscopic drawing and projection apparatus." It embodies the principle of the microscope, which magnifies the specimen, and a projecting apparatus which, through the use of a lens and a light, projects the magnified image of the specimen downward on a sheet of paper where the reflected image is shown in a picture or reflection about seven inches in diameter, or upon a screen on the wall where the image is three or four feet in diameter. The evidence shows that the devices are used in biological laboratories, in institutions of learning, in pathological laboratories, in hospitals, and in laboratories of industrial concerns such as paper mills, where the examination of microscopic specimens is desired.

In the *Clay Adams Co., Inc.*, case, *supra*, the Government advanced the claim for classification of the merchandise as a projection lens and "frames and mountings therefor, and parts" thereof. The majority opinion of the appellate court rejected the claim in the following language:

* * * We are not impressed with the contention of the Government that the importation at bar consists of a projection lens and frames and mountings therefor. The importation embraces a projection lens and a microscope and something else in the nature of projection apparatus. It may include what might be termed, under some circumstances, frames and mountings, but it would be difficult to determine to what the frames and mountings belong—certainly not frames and mountings for a microscope, because the term "microscope" embraces the whole of that portion of the optical instrument devoted to the principle of magnification. We hardly think either of the terms "projection lenses * * * frames and mountings therefor," or "projection lenses * * * microscopes * * * frames and mountings therefor," aptly describes the merchandise at bar, but we do hold that the provision for "all optical instruments, frames and mountings therefor," clearly embraces the importation at bar.

Plaintiff's alternative claim for classification as scientific or laboratory instruments is also disposed of under the *Clay Adams Co., Inc.*, case, *supra*. The importer therein sought the same classification under the principle of relative specificity and argued that the provision for "Scientific and laboratory instruments, apparatus, utensils, appliances, * * * and parts thereof," was more specific than the provision for "optical instruments" in paragraph 228. While the majority of the appellate court overruled the importer's claim, they did so without applying the doctrine of relative specificity. The court expressed its conclusion as follows:

We think the context of paragraph 228(b) and a consideration of the character of the articles Congress specifically provided for therein compels the conclusion that the legislature contemplated the classification thereunder of merchandise such as is at bar. This being clear to us, hair-splitting considerations involved in determining the degree of specificity of the two provisions is unimportant. The paragraph provides for projection lenses and for microscopes, and the catchall provision covers "all optical instruments." It being conceded that the importation is an optical instrument, is there any plausible reason to conclude that Congress intended to have a different rate of duty apply to a combination of a projection lens and a microscope than that which it made applicable to the units of the combination when imported by themselves? No reason has been assigned, and we know of no plausible reason which can be assigned which would account for Congress intending such an anomalous result. Anomalies of this kind must be avoided if the language permits. The language not only permits the avoidance of such an anomalous result but we think compels it. See *United States* v. *Stone & Downer Co.*, 274 U.S. 225.

In a special concurring opinion in the *Clay Adams Co., Inc.*, case, the late Judge Hatfield applied the principle of relative specificity and concluded as follows:

The involved articles are undoubtedly optical instruments and are dutiable as such under the provisions of paragraph 228(b), unless they are more specifically provided for as scientific and laboratory instruments, etc., under paragraph 360.

An optical instrument is one which relates to the science of optics. See Webster's New International Dictionary. It is "primarily used to aid or supplement human vision." Summary of Tariff Information, 1929, page 552.

Whether the provisions for scientific and laboratory instruments, etc., contained in paragraph 360, be given limited or extended application, they, nevertheless, cover a variety of articles used for numerous scientific purposes, whereas the provision for "all optical instruments" is limited to such scientific instruments as relate to and are used only in the science of optics.

In view of this situation it seems obvious to me that the provision for all optical instruments contained in paragraph 228(b) is a more specific designation for such instruments than the provisions for scientific and laboratory instruments, etc., contained in paragraph 360.

Accordingly, applying the doctrine of relative specificity, it is evident that the purpose of the Congress was to provide for the involved articles at 45 per centum ad valorem under paragraph 228(b).

The microprojectors before us in the present case, like the apparatus that was involved in the *Clay Adams Co., Inc.*, case, possess and

employ the principle of the microscope in the magnification of a specimen and a projecting means, which, through the use of a system of lenses and light, projects the magnified image of a specimen on a screen. Hence, the reasoning followed and the statutory construction invoked in that case apply with equal force and effect in this case. Accordingly, we hold the merchandise in question to be properly classifiable under the provision for "all optical instruments, frames and mountings therefor," in paragraph 228(b) of the Tariff Act of 1930 and dutiable at the rate of 45 per centum ad valorem, as assessed by the collector. Our discussion herein and the conclusion reached adhere to our decision in the *Manca, Inc., et al.* case, Abstract 61229, the record in which was incorporated in this case.

Careful consideration has been given to all of the cases cited in the briefs filed by counsel for the respective parties. Specific reference has been made only to those cases deemed necessary to support our conclusion.

The protests are overruled, and judgment will be rendered accordingly.